UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ALFRED C. "CHUCK" ANDERSON, CAPTAIN, U.S. ARMY RESERVE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 3:06-cv-466 (VARLAN/SHIRLEY) |
| SANFORD L.P. d/b/a SANFORD BRANDS, A Division of NEWELL RUBBERMAID, INC., | ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM & ORDER**

Plaintiff filed this civil action against defendant claiming that defendant unlawfully terminated him without cause in connection with his military services in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4311, 4316(c)(1) ("USERRA"), and that defendant is liable for retaliatory discharge under Tennessee common law. This case is currently before the Court on Defendant's Motion for Summary Judgment [Doc. 29]. Plaintiff responded in opposition to defendant's motion [Doc. 37], defendant filed a reply [Doc. 43], and, with leave of court, plaintiff filed a sur-reply [Doc. 70]. Thus, this matter is now ripe for determination. The Court has carefully considered the pending motion, along with the parties' briefs, affidavits, and other relevant pleadings. For the reasons set forth herein, defendants' motion for summary judgment [Doc. 29] will be DENIED.

**I. Relevant Facts**

As the Court is required to do in reviewing a motion for summary judgment, all facts will be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff, Captain Alfred C. "Chuck" Anderson, was employed as an Injection Supervisor at defendant, Sanford L.P., d/b/a Sanford Brands, a division of Newell Rubbermaid, Inc. ("Sanford"), in Maryville, Tennessee from December 18, 2000 until July 6, 2006 on an at-will basis. [Doc. 13.] Plaintiff is, and was at all relevant times, a commissioned officer in the United States Army Reserve. [*Id.*] Plaintiff was mobilized with the 478th Engineering Battalion, Ft. Thomas, Kentucky, for service in Iraq from on or about February 5, 2003 until on or about August 15, 2003. [*Id.*] Due to his mobilization, plaintiff took a leave of absence from his employment with Sanford. [*Id.*] After this deployment ended, plaintiff timely reported for work and defendant re-employed him. [*Id.*] At no time before this mobilization did defendant discipline plaintiff due to any alleged problems with his performance. [*Id.*] However, defendant issued plaintiff a Performance Optimization Plan dated May 19, 2004 listing several performance deficiencies.[1] [Doc. 37-18]

Plaintiff was mobilized for service in Iraq a second time from on or about August 15, 2004 until on or about January 15, 2006, this time with the 844th Engineering Battalion,

---

[1] Plaintiff objects to the relevance of this Performance Optimization Plan because it was not a reason for plaintiff's termination and under defendant's own policies, it became inactive after 6 or 12 months. [Doc. 37.] The Court notes that plaintiff's assertion that he was never disciplined prior to his military service makes this document relevant for purposes of the Court's consideration of defendant's motion.

Knoxville, Tennessee. [Doc. 13.] Plaintiff again took a leave of absence from Sanford due to this mobilization. [*Id.*] While on active duty, defendant contacted plaintiff twice: the first time telling him to return to work as soon as possible and the second time insisting that plaintiff return to work immediately. [*Id.*] Plaintiff attempted to comply as limited by his government obligations. [*Id.*] Plaintiff timely reported for work at defendant and defendant re-employed him. [*Id.*] After his return to work, plaintiff was required by the Army to attend several weekend training sessions and, on short notice, one longer annual training session. [*Id.*; Doc. 37.]

From approximately the time of plaintiff's return from his second deployment until his termination, plaintiff reported to Rob Shaw, Operations Manager, and Mr. Shaw reported to Brian Rhodes, Director of Operations. [Doc. 37.] On April 18, 2006, defendant, through Mr. Shaw, executed a written Performance Improvement Plan which included a list of allegations of plaintiff's poor performance in the areas of compliance with company policies and procedures, leadership, and commitment. [Doc. 13.] The concerns about plaintiff's commitment were due to his absences, in part attributed to his military service. [Doc. 37-9.]

In June 2006, Mr. Shaw made a comment to Robert Conklin, another Injection Supervisor, that he had issues with plaintiff "because he is never here." [Doc. 37-23.] Mr. Conklin replied that plaintiff was only gone because of his military duty. [*Id.*] Mr. Shaw responded, "but he is still gone . . . he is always gone due to his military." [*Id.*] Plaintiff's employment with defendant was terminated on July 7, 2006 allegedly for plaintiff's failure to meet the expectations of the Performance Improvement Plan. [Doc. 13.]

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III. Analysis**

    **A.    Violation of USERRA Under 38 U.S.C. § 4311**

The USERRA protects employees who are absent from employment for service in a uniformed service. Under 38 U.S.C. § 4311, an employer cannot use an employee's military service as a motivating factor for adverse employment action toward the employee, unless the employer can prove that the action would have been taken in the absence of the employee's service. 38 U.S.C. § 4311(c)(1). Plaintiff alleges that defendant violated USERRA, 38 U.S.C. § 4311, by using his military service as a motivating factor for his discharge.

To make out a prima facie case of termination in violation of this section, an employee has the burden to show that his military service was a motivating factor in his termination. *See Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 16-17 (1st Cir. 2007). Once the employee has made this showing, the burden of production and persuasion shifts to the employer present a valid reason for discharge not related to the employee's military service and to show that the reason is not pretextual and that the employee would have been terminated in the absence of his military service. *Id.* Unlike in Title VII actions, the burden of persuasion does not shift back to the employee to show that the employer's stated reason was in fact pretext. *Id.* at 17 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

### 1. Plaintiff's Prima Facie Case That Military Service Was a Motivating Factor

It is plaintiff's burden to allege sufficient evidence upon which a reasonable jury could conclude that his military service was a motivating factor in his termination. *Velazquez-Garcia*, 473 F.3d at 16-17. Courts have construed motivating factor to mean a factor, not the sole factor. *See id.* at 16. "The term 'motivating factor' means that if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations." *Robinson v. Morris Moore Chevrolet-Buick, Inc.*, 974 F. Supp. 571, 576 (E.D. Tex. 1997) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)). A plaintiff establishes a prima facie case under § 4311 if he presents evidence "from which it may plausibly be inferred that [plaintiff's] absence due to reserve related obligations was a motivating factor for his discharge." *Robinson*, 974 F. Supp. at 576.

Plaintiff has alleged facts that allow the Court to make an inference that he was fired because of his military obligations. Plaintiff notes that defendant questioned plaintiff's commitment to the company based on his absences from work. [Doc. 37-9.] While some of these absences were for vacation, the April 2006 Performance Improvement Plan also references plaintiff's time off due to his military commitments. [*Id.*] The Performance Improvement Plan notes that plaintiff was entitled to time off for his military services but still includes that time as part of its complaint for lack of commitment. [*Id.*]

Plaintiff argues that he was treated differently than other supervisors who were not in the military and that he was treated differently after he exercised his rights under USERRA than he was before he did so. [*See* Doc. 70.] A showing that employees with similar performance issues were not terminated is probative that an employee would not have been terminated but for his military obligations. *Velazquez-Garcia*, 473 F.3d at 21. Specifically, plaintiff notes that the other Injection Supervisor on his shift who was not in the military was not similarly blamed for the allegations made against plaintiff in the Performance Improvement Plan that would apply to the management of the shift as a whole. [Doc. 37.]

Additionally, plaintiff's supervisor and the person who made the decision to terminate plaintiff, Rob Shaw, commented to another employee that he had a problem with plaintiff because plaintiff "is always gone due to his military." [Doc. 37-23.] Plaintiff was terminated less than a month after Mr. Shaw made this comment and less than six months after his return from deployment. Defendant argues that Mr. Shaw's comment was a stray remark and therefore is insufficient to support plaintiff's claims. It is true that "stray workplace remarks . . . normally are insufficient, standing alone, to establish . . . the requisite discriminatory animus." *Velazquez-Garcia*, 473 F.3d at 18 (quoting *Gonzales v. El Dia, Inc.*, 304 F. 3d 63, 69 (1st Cir. 2002)). However, stray marks in combination with other evidence such as comments about the difficulty of adjusting plaintiff's work schedule due to his military commitments and the timing of plaintiff's firing may properly constitute evidence of discriminatory intent. *Velazquez-Garcia*, 473 F.3d at 18 (citations omitted). Accordingly, the notation on plaintiff's performance report referring to his absences for military service,

7

plaintiff's differential treatment, Mr. Shaw's remark to another employee about plaintiff being gone due to his military obligations, and the timing of plaintiff's firing are sufficient to make out a prima facie case for discharge in violation of USERRA under 38 U.S.C. § 4311(c).

### 2. Defendant's Argument That Plaintiff's Military Service Was Not a Motivating Factor

Because plaintiff made out a prima facie case for a violation of USERRA under 38 U.S.C. § 4311(c), the burden shifts to defendant to show it had a non-discriminatory reason for plaintiff's discharge and that "the stated reason was not a pretext; that is, that 'the action would have been taken in the absence of [the employee's] military service.'" *Velazquez-Garcia*, 473 F.3d at 17 (quoting 38 U.S.C. § 4311(c)). "The issue under USERRA is not whether an employer is 'entitled' to dismiss an employee for a particular reason, but whether it would have done so if the employee were not in the military." *Velazquez-Garcia*, 473 F.3d at 20.

Defendant contends that plaintiff was terminated for cause, the sole cause being Mr. Shaw's belief that plaintiff failed to comply with the terms of his April 2006 Performance Improvement Plan.[2] [*See* Doc. 30.] However, plaintiff provides evidence that disputes these alleged deficiencies listed in the April 2006 Performance Improvement Plan. The

---

[2] While defendant listed other reasons it was not satisfied with plaintiff's work performance in plaintiff's termination letter, it has not asserted that these reasons contributed to the decision to discharge plaintiff. However, even if these other issues contributed to defendant's decision, plaintiff has sufficiently disputed them. [Doc. 37.]

8

Performance Improvement Plan states that plaintiff failed to comply with company policies and procedures for approving time off for a new employee, for failing to submit written warnings for employees that have accumulated AOs (absence occurrences), and for issuing corrective action without consulting Human Resources first. [Doc. 37-9.] Plaintiff contends that he never approved the leave for the new employee, he submitted written warnings to employees with AOs, and he only consulted with the employee about corrective action but did not file a written warning and had never been instructed to consult with Human Resources before issuing corrective action. [*See* Doc. 37.] In the area of leadership, the Performance Improvement Plan blames plaintiff for failure to keep the plant clean during his shift and alleges that he was not sufficiently working to improve the plant floor. [Doc. 37-9.] Plaintiff addresses these allegations by noting that plant upkeep and cleanliness are everyone's responsibility but that he was being singled out for it, that he had placed maintenance orders to clean up some areas, and that he had created a system to improve tracking earned hours and machine down-time. [Doc. 37.]

The remaining complaint about plaintiff's performance in the Performance Improvement Plan was concern over plaintiff's commitment to the job, company, and co-workers based on his time off for both vacation and military service. [Doc. 37-9.] Though defendant argues that its concern over plaintiff's commitment stemmed from plaintiff's "last minute, unwritten vacation request" and not from any request for military leave, defendant specifically noted plaintiff's absence due to his military obligations in the Performance

Improvement Plan in discussing concern for his lack of commitment to the company. [*See* Docs. 43; 37-9.]

Viewing the facts in the light most favorable to plaintiff, the Court cannot conclude that defendant has met its burden to show that its reasons for terminating plaintiff other than his military service were not pretextual and that defendant would have fired plaintiff regardless of his military service. Accordingly, defendant's motion for summary judgment on plaintiff's USERRA claim under § 4311 will be denied.

### B. Violation of USERRA Under 38 U.S.C. § 4316(c)

Plaintiff alleges that defendant violated USERRA, 38 U.S.C. § 4316(c), by terminating him without cause within one year of his return from military service. Under 38 U.S.C. § 4316(c), upon return to employment after military service, an employee cannot be discharged within one year from the date of return unless the discharge is for cause. The term "for cause" is not defined in the USERRA, but courts have determined that is must be construed narrowly to uphold the spirit of the USERRA's protection of employees who engage in military service. *See Johnson v. Michigan Claim Serv., Inc.*, 471 F. Supp. 2d 967, 973 (D. Minn. 2007) (citation omitted); *Duarte v. Agilent Technologies, Inc.*, 366 F. Supp. 2d 1039, 1046 (D. Colo. 2005). "In a discharge action based on conduct, the employer bears the burden of proving that it is reasonable to discharge the employee for the conduct in question, and that he or she had notice, which was express or can be fairly implied, that the conduct would constitute cause for discharge." 20 C.F.R. § 1002.248(a). Because of this

burden, "it is difficult for employers to achieve summary judgment on claims under § 4316(c)." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006).

Defendant cites plaintiff's alleged failure to meet the requirements of the Performance Improvement Plan as its "for cause" reason for plaintiff's termination. As discussed in Part II.B. above, plaintiff has presented evidence that creates genuine issues of fact as to whether these reasons were genuine or merely pretextual. Because plaintiff has disputed all of the conduct about which defendant complains, the Court cannot conclude as a matter of law that it was reasonable to discharge plaintiff for the reasons given by defendant. Accordingly, there are genuine issues of material fact regarding whether plaintiff was fired for cause, and defendant's motion for summary judgment on plaintiff's claim under § 4316(c) will be denied.

### C. USERRA Harassment Claim

Plaintiff states that he is not bringing a separate claim for harassment or hostile work environment under USERRA. [*See* Doc. 37 at n.1.] To the extent that such a claim was made in plaintiff's First Amended Complaint [Doc. 13], the Court considers it voluntarily dismissed by plaintiff.

### D. Violation of USERRA Under 38 U.S.C. § 4316(a)

Defendant argues that plaintiff did not assert a claim for defendant's failure to give plaintiff a raise in the year 2005 in violation USERRA, 38 U.S.C. § 4316(a). Plaintiff asserts that this claim has always been at issue and relies on paragraph 36 of the First Amended

Complaint which states that he was discriminated against in violation of USEERA "in the terms and conditions of his employment." [Doc. 70 (citing Doc. 13).]

For a proper pleading, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint "need only provide the defendant with fair notice of what the claim is and the grounds on which it rests." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (citations and quotations omitted). A plaintiff is not required to list in detail the facts upon which he bases his claim. *Minadeo v. ICI Paints*, 398 F.3d 751, 762 (6th Cir. 2005). The *Wysong* court found it sufficient that the plaintiff broadly alleged allegations under the Family Medical Leave Act despite plaintiff not alleging the theory under which she planned to proceed. 503 F.3d at 446.

The claim in question is governed by § 4316(a), which states, "A person who is reemployed under [USERRA] is entitled to . . . the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." The implementing regulations for this part of the USERRA provide that an upon returning from military service:

> "The rate of pay must be determined by taking into account any pay increases, differentials, step increases, merit increases, or periodic increases that the employee would have attained with reasonable certainty had he or she remained continuously employed during the period of service . . . . if the employee missed a merit pay increase while performing service, but qualified for previous merit pay increases, then the rate of pay should include the merit pay increase that was missed."

20 C.F.R § 1002.236.

Here plaintiff broadly makes allegations that he was discriminated against for his military service in violation of USEERA. As grounds for this claim, he states that he was "discriminated against by SANFORD in violation of the USERRA in the terms and conditions of his employment and the illegal termination of his employment." [Doc. 13.] Salary and pay rate are terms and condition of employment. Applying the liberal standard of the federal pleading requirement, the Court finds plaintiff's allegation that he was discriminated against in violation of USERRA in the terms and conditions of his employment sufficient to proceed on the claim that defendant failed to give him a raise in violation of USERRA.

Defendant further argues that this claim fails as a matter of law. To succeed on a claim under § 4316(a) based upon a defendant's failure to give plaintiff a raise, a plaintiff must establish that he did not receive that raise that he would have been reasonably certain to receive had he not been absent due to military service. 38 U.S.C. § 4316(a); 20 C.F.R § 1002.236. In determining whether a raise was reasonably certain, the applicable regulation suggests that an employee who has received past pay increases is reasonably certain to receive future increases. 20 C.F.R § 1002.236 ("[I]f the employee missed a merit pay increase while performing service, but qualified for previous merit pay increases, then the rate of pay should include the merit pay increase that was missed."). Plaintiff received raises in February or March of each of the three years immediately preceding his military service and in February 2006, but not anytime during 2005. [Doc. 37-13.] According to the

13

regulation, because plaintiff received past pay increases, a jury could reasonably conclude that he should have received a pay increase in 2005.

Pay increases at Sanford are made after a performance evaluation and at the discretion of the employee's supervisor. [Doc. 43.] Plaintiff did not receive an evaluation in 2005 because he was in Iraq at the time the evaluations were completed. [Doc. 43.] Defendant argues that because pay increases were discretionary, plaintiff was not reasonably certain to have received one, particularly considering his alleged performance issues. Were it not for plaintiff's military service, he would have received a performance evaluation. Based on plaintiff's history of salary increases following his performance evaluations, a reasonable jury could conclude that plaintiff was reasonably certain to have received a pay increase in 2005 were it not for his military service. Accordingly, defendant's motion for summary judgment on this issue will be denied.

### E. Retaliatory Discharge Claim Under Tennessee Common-Law

Plaintiff alleges that defendant discharged him in retaliation for exercising his rights under USERRA in violation of Tennessee common-law. The elements of a common-law retaliatory discharge claim are: (1) an employment-at-will relationship; (2) the employee bringing the claim was terminated, (3) the reason for the termination is that the employee attempted to exercise a statutory or constitutional right, and (4) the employee's exercise of the protected right was a substantial factor in the employer's decision to discharge the employee. *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002). To survive a motion for summary judgment on a claim for retaliatory discharge, the plaintiff

must present evidence of a causal link between the exercise of a right and the discharge. *Mason v. Seaton*, 942 S.W.2d 470, 473. If plaintiff has offered evidence to support such a link, the employer must show that it had a legitimate, non-pretextual reason for the termination. *Id.*

An employee may demonstrate that an employer's proffered, non-discriminatory reasons for an adverse employment action are pretextual by revealing the 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanation." *Wilson v. Rubin*, 104 S.W.3d 39, 50-51 (Tenn. Ct. App. 2002) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002)). "Three of the most common ways to undermine an employer's proffered reasons include: (1) establishing that the proffered reasons have no basis in fact, (2) establishing that the proffered reasons did not actually motivate the adverse employment action, or (3) establishing that the proffered reasons were insufficient to motivate the adverse employment action." *Wilson*, 104 S.W.3d at 51 (citations omitted).

There is no dispute that plaintiff was an employee-at-will who was discharged after exercising his rights under USERRA. Defendant argues that the causal connection between plaintiff's exercise of his USERRA rights and his discharge is lacking and that plaintiff cannot show that defendant's given non-retaliatory reason for the discharge was pretextual. As discussed above, facts are in dispute regarding whether plaintiff's military service was a substantial factor in his termination and whether the other alleged performance issues were merely pretextual. It is not clear that defendant's proffered reason has a basis in fact or that

15

it was sufficient to motivate or actually motivated defendant's decision to terminate plaintiff. Accordingly, defendant's motion for summary judgment on plaintiff's claim of retaliatory discharge under Tennessee common-law will be denied.

**IV.     Conclusion**

For the reasons set forth herein, the Court finds that defendant is not entitled to judgment as a matter of law.  Accordingly, Defendant's Motion for Summary Judgment [Doc. 29] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE